# ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeals of -- )
)
Global Engineering & Construction, LLC ) ASBCA Nos. 60072, 60073, 60074
) 60075, 60076, 60077
)
Under Contract No. W912DY-12-D-0013 )

APPEARANCES FOR THE APPELLANT: Johnathan M. Bailey, Esq.
Kristin E. Zachman, Esq.
 Bailey & Bailey, P.C.
 San Antonio, TX

APPEARANCES FOR THE GOVERNMENT: Thomas H. Gourlay, Jr., Esq.
 Engineer Chief Trial Attorney
Steven W. Feldman, Esq.
Clay Weisenberger, Esq.
 Engineer Trial Attorneys
 U.S. Army Engineer District, Huntsville

## OPINION BY ADMINISTRATIVE JUDGE DELMAN ON THE GOVERNMENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

The U.S. Army Corps of Engineers (government) moves to dismiss these appeals for lack of jurisdiction. The contractor, Global Engineering & Construction, LLC (Global or appellant), opposes dismissal.[1] For reasons stated below, we dismiss the appeals for lack of jurisdiction.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. On 11 July 2012, appellant was awarded Contract No. W912DY-12-D-0013 under a Multiple Award Task Order Contract (MATOC) for design and construction services at various military medical facilities under the Army's Medical Repair and

---

[1] The government's original motion sought dismissal of the appeals based upon, *inter alia*, the failure of Global to submit a properly filed claim to the contracting officer. In supplemental briefing, the government took a different tact, contending that appellant did file a proper claim but that it failed to timely appeal the contracting officer's decision denying the claim, and hence dismissal of the appeals is warranted on this basis.

Renewal (MRR) Program (R4, tab 1).[2] The MRR Program, administered by the U.S. Army Corps of Engineer's Engineering and Support Center in Huntsville, Alabama, is a fast-track method for design and execution of all types of facility repairs, renovations, conversions, alterations, additions and construction projects. The actual work to be performed under the MATOC was to be competitively awarded to the MATOC awardees through issuance of task orders.

2. In September 2013, the government issued three task orders for construction services to appellant: Task Order (TO) 0002, Aviation Survival Training Center in Lemoore, California, for the firm-fixed-price of $7,805,355.06 (R4, tab 2); TO 0003, Aviation Survival Training Center in Oak Harbor (Whidbey Island), Washington, for the firm-fixed-price of $3,132,015.02 (ASBCA Nos. 60074, 60075 R4, tab 2); and TO 0004, Pain/Neuro/TBI Clinic in Fort Sill, Oklahoma, for the firm-fixed-price of $5,069,304.14 (ASBCA Nos. 60076, 60077 R4, tab 2).

3. During the performance of these TOs, the parties joined issue on certain staffing requirements for the projects. In brief, the government was of the view that appellant was required under the contract and each TO to provide two separate individuals to perform the three roles of site superintendent, on-site quality control manager, and site safety and health officer. Appellant was of the view that it was permitted to use one person on each project to perform all three functions.

4. The government issued three letters to appellant on or about 12 February 2015, directing appellant to provide an additional person as an on-site quality control manager for TOs 0002, 0003, and 0004. Appellant disputed the government's position by letter dated 18 February 2015, contending that it was providing what was required by the contract. (R4, tab 5 at 6)

5. By letter to appellant dated 26 March 2015, the contracting officer (CO) directed appellant to provide a second person for each project by 30 March 2015 (R4, tab 5 at 10). Appellant responded by email letter of the same date, stating, in part, that it would provide such a person under protest. It considered the government's direction a change to the contract for which it was entitled to an equitable adjustment. Appellant stated: "As soon as these costs are known, a CDA claim for such costs will be submitted." (*Id.* at 13)

6. Appellant failed to provide the second person for the project under TO 0004 by 30 March as directed by the government. On 31 March 2015, the CO suspended

---

[2] References to the Rule 4 file will be to ASBCA Nos. 60072 and 60073 unless otherwise indicated.

the work under TO 0004 pending appellant's compliance (ASBCA Nos. 60076, 60077 R4, tab 5 at 15-17).

7. On 31 March 2015 appellant submitted invoices to the government for work performed on each TO. The government rejected the invoices. By email letter dated 31 March appellant objected, stating that the rejection was without basis and demanding that the government immediately rescind the rejection. Appellant did not demand a payment in a sum certain, nor did it seek an interpretation or adjustment of contract terms or any other relief with respect to the staffing issue. (R4, tab 5 at 17-18)

8. By email to appellant dated 2 April 2015, "Subject: Payment Retainage on Current and Future Invoices" the CO stated as follows:

> Due to the non-conformance of providing the required
> second person on site for Ft. Sill, Lemoore, and Whidbey
> Island, the current rejected invoices and all future invoices
> will be short paid to cover the costs of additional person
> and potential damages (same cost as for the second person)
> due to non-conformance.

The CO stated that the government would withhold $185,597.76 ($30,932.96 to be spread over six invoices) under TO 0002; $214,428.48 ($42,885.70 to be spread over five invoices) under TO 0003; and $220,735.20 ($31,533.60 to be spread over seven invoices) under TO 0004. (R4, tab 5 at 29)

9. The 2 April 2015 email concluded as follows:

> The current invoices that were recently rejected will be
> accepted, but will be reduced by the amount specified
> above for each task order. *Once projects are completed
> and projects are deemed acceptable, we will release the
> extra retainage being held for damages. Also occurring at
> the end of each project, a modification will be issued for
> the reduction of the cost for the mandatory second person
> on sight* [sic] *on each task order.*

(R4, tab 5 at 29) (Emphasis added) The email did not state it was a CO's decision and did not inform appellant of any rights of appeal. By email dated 3 April 2015, appellant acknowledged receipt of the government's email, and stated that it did "not agree that the Government's claim has any merit" (*id.* at 31).

3

10. By letter to the CO dated 28 May 2015, referencing all three TOs, appellant's counsel asserted that appellant should be reimbursed for the monies improperly withheld by the government and also for appellant's expenses to comply with the government's directive of 26 March 2015. The total amount sought by appellant was in excess of $100,000, but appellant did not provide a claim certification. (R4, tab 5 at 35-70)[3]

11. By email and letter dated 19 June 2015, the CO replied to appellant's 28 May letter, disagreeing with appellant's contract interpretation. The CO ended the letter by stating: "Based on the foregoing, we consider your request for an equitable adjustment to be without merit. Should you have any questions regarding this matter, please do not hesitate to contact myself." This email also did not state it was a CO's decision and also did not inform appellant of any rights of appeal. (R4, tab 5 at 71-74)

12. On 13 July 2015, appellant filed six notices of appeal with this Board. Each notice of appeal (NOA) stated that the appeal was from the "April 2, 2015 decision of the Contracting Officer."[4]

13. Appellant filed two NOAs for each TO, one from the government's retainage for "potential damages," and one from the government's withholdings related to the staffing issue. The Board assigned a docket number for each NOA, i.e., ASBCA Nos. 60072 and 60073 (TO 0002); ASBCA Nos. 60074 and 60075 (TO 0003); and ASBCA Nos. 60076 and 60077 (TO 0004). The Board consolidated the appeals. The government filed its motion to dismiss thereafter.

---

[3] We need not decide whether appellant's 28 May letter constituted one monetary request encompassing all three TOs or three separate requests, one for each TO. In any event, the total amount in issue under each TO exceeded $100,000, and appellant failed to submit any certification, whether singly or collectively.

[4] There is no dispute that appellant received the 2 April 2015 email on that date, and that its notices of appeal to the Board were filed 102 days after receipt of this email. The CDA, 41 U.S.C. § 7104(a), requires appeals to be filed no later than 90 days from receipt of a CO decision. This time limitation of course applies to a properly appealable CO's decision. We address herein whether the 2 April email was a properly appealable CO decision.

## DECISION

Under the Contract Disputes Act (CDA), 41 U.S.C. §§ 7101-7109, the first link in the chain of our jurisdiction is the filing of a proper claim by one of the contracting parties. 41 U.S.C. § 7103(a)(1), (a)(3). We address below whether either party filed a proper CDA claim under these appeals.

We believe there has been no showing of a properly filed contractor claim on this record. Appellant's letter dated 26 March 2015 was not such a claim; it notified the government that appellant was entitled to an equitable adjustment for extra costs due to the staffing issue and that appellant would file a claim in the future once the costs were known (SOF ¶ 5). Appellant's letter dated 31 March 2015 did not mention the staffing issue at all (SOF ¶ 7). Appellant's 28 May 2015 letter did seek return of withheld money and the reimbursement of certain expenses due to the staffing issue (SOF ¶ 10). However, these amounts exceeded $100,000 but appellant failed to submit a claim certification to the CO as required by the CDA. 41 U.S.C. § 7103(b). Absent such a claim certification, there was no contractor claim that required a CO decision and no legal basis to file any appeal to this Board.

We also believe there has been no showing of a properly filed government claim here. The CDA requires that a government claim be the subject of a written CO decision. 41 U.S.C. § 7103(a)(3). *Hanley Industries, Inc.*, ASBCA No. 56976, 10-1 BCA ¶ 34,425 at 169,929. A CO "decision," by definition, should contain indicia of finality and conclusiveness. Recently, the Federal Circuit in *Guardian Angels Medical Service Dogs, Inc. v. United States*, 809 F.3d 1244, 1247, 1250 (Fed. Cir. 2016), discussed the finality of CO decisions, in the context of reconsideration, and stated as follows:

> Regardless of which forum a contractor elects, however, only final contracting officer decisions may be appealed.
>
> ....
>
> An agency decision will be deemed final only if it "mark[s] the consummation of the agency's decisionmaking process." [Citations omitted]

The government's email of 2 April 2015, advising appellant that it would short-pay appellant's monthly invoices, was not "final" insofar as it did not mark the consummation of the government's decision-making process. The email stated that "at the end of each project, a modification will be issued for the reduction of the cost for

5

the mandatory second person." It also stated that the monthly retained amounts for damages would be released "[o]nce projects are completed and projects are deemed acceptable." (SOF ¶ 9) This language strongly suggests that further government action was necessary to obtain the CO's "final" decision. This language is also consistent with the declaration of the CO, attached to the government's original motion, which stated that it was not her intent to file a CO decision asserting a government claim on 2 April, but rather to "impose a retainage as allowed by standard FAR clause 52.232-5 in the basic contract." We believe that this government email was an action of contract administration of a preliminary nature, rather than an invocation of the disputes process.[5]

*Placeway Construction Corp. v United States*, 920 F.2d 903 (Fed. Cir. 1990), cited by Global, is factually distinguishable. In *Placeway* the Court found a CO decision asserting a government claim where, at the close of contract performance the government issued a decision asserting a set-off, declining to pay the balance of the contract price otherwise due because of contractor performance delays. Given that factual context there was an element of finality to the government's decision not present in the 2 April email. For example, the act of short-paying monthly invoices during the contract performance period did not purport to make any decision adjusting the price of the contract as was the case in *Placeway*.

We have reviewed the other cases cited by appellant, but they are also factually distinguishable and do not compel a conclusion different from the one we have reached. We conclude that the government's 2 April 2015 email providing for the short-pay of monthly invoices during contract performance did not constitute an appealable CO final decision asserting a government monetary claim against Global. Consequently, appellant's NOAs from this purported "decision" were premature and of no legal effect.

As for the government's email of 19 June 2015, it is readily apparent from the plain language of the email that it constituted a review and denial of appellant's 28 May 2015 request for equitable adjustment (SOF ¶ 11). Appellant's monetary request, in excess of $100,000, was not certified, and thus the government's email was not an appealable CO final decision from a properly filed contractor claim, nor was this email an appealable CO final decision asserting any government claim.

---

[5] By characterizing the government's email in this manner, we do not intend to minimize its significance or its effect on the contractor. An aggrieved contractor may file its own claim with the CO under the CDA, under appropriate circumstances and when all claim requirements are met. As we have held however, appellant did not file such a claim here.

6

## CONCLUSION

In the absence of any properly filed contractor claim or any properly issued CO decision asserting a government claim, there was no legal basis for Global to file any appeals to this Board. The appeals were premature. Accordingly, we dismiss ASBCA Nos. 60072, 60073, 60074, 60075, 60076, 60077. The government's motion to dismiss is granted consistent with this opinion.[6]

Dated: 1 April 2016

JACK DELMAN
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

---

[6] Given our conclusion, we need not address the parties' other jurisdictional arguments regarding the purported CO decision, including whether the CO ever reconsidered the "decision" and whether appellant was prejudiced by the failure of the CO "decision" to inform appellant of its appeal rights.

7

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 60072, 60073, 60074, 60075, 60076, 60077, Appeals of Global Engineering & Construction, LLC, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals
